UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-24258-CIV-GRAHAM/GOODMAN

FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER
FOR AMTRUST BANK,

    Plaintiff,

v.

B & A TITLE SERVICES CORPORATION,

    Defendant.

_____/

**ORDER ON DEFENDANT'S AMENDED VERIFIED MOTION**

**TO WITHDRAW ADMISSIONS**

Defendant B & A Title Services Corporation ("B&A") is seeking to withdraw admissions deemed admitted by its failure to timely respond to Plaintiff Federal Deposit Insurance Corporation's, as Receiver for Amtrust Bank (the "FDIC"), request for admissions. FDIC objects to the motion. For the reasons outlined below, the Undersigned **GRANTS** B&A's motion.

**I.     BACKGROUND**

The FDIC sued B&A for breach of contract, breach of fiduciary duty, and negligent representation. [ECF No. 1]. At bottom, the FDIC contends that B&A violated the closing instructions it agreed to follow because it allegedly knew the property seller in a purchase contract had not been on the title to the property for at least 90 days, as required, but proceeded to close the transaction without notifying Amtrust Bank.

In its corrected answer and affirmative defenses, B&A denied the FDIC's allegations and alleged that "any information regarding the purchase and sale transactions were disclosed by B&A to Amtrust, and/or Amtrust had independent knowledge of the transaction(s)." [ECF No. 18, ¶ 10]. B&A repeated this assertion -- Amtrust Bank had knowledge of the relevant facts regarding the closing from B&A or through information it independently obtained -- in its first and second affirmative defenses (waiver and estoppel). [*Id.* at pp. 6-7].

In its Rule 26(a) Initial Disclosures, B&A noted that: (1) its president would testify that B&A "had no involvement in the preparation of or any aspect" of the two contracts; (2) "both the requests for title commitments and the contracts were provided to B & A Title by Monster Mortgage, Inc.,"; and (3) "Ohio Savings Bank, through Monster Mortgage, was aware of or had knowledge of the contracts and of the assignment of Contract 1 and of the structure of the transaction." [ECF No. 51-1]. These disclosures also listed the names of the specific employees and/or agents of Monster Mortgage, Inc. ("Monster Mortgage") who were involved in the closing. [*Id.*].

On July 10, 2013, the FDIC served its First Request for Admissions. [ECF No. 51-3]. The discovery request concerns 22 separate requests for admission. Taken together, these 22 requests effectively ask B&A to admit every significant factual allegation underlying the lawsuit.

On July 22, 2013, B&A's counsel left his law firm of 10 years and moved to the Holland & Knight firm. [ECF No. 51, p. 2 n.1]. As a result of this move, B&A did not timely respond to the July 10, 2013 request for admissions.

On September 4, 2013, the parties had a telephone conversation concerning mediation. [ECF No. 51, p. 2]. During that call, the FDIC's attorney asked B&A's counsel when the responses to the request for admissions would be served. According to B&A's counsel, this question was the first time he had heard about a request for admissions in the case. B&A's counsel then asked for a copy of the request, which was sent later the same day (i.e., September 4, 2013). B&A's counsel then met with his client to discuss the responses, and he forwarded the responses on September 19, 2013, 15 days after he said he first learned of them.

On September 24, 2013, the FDIC filed a motion for partial summary judgment. [ECF No. 40]. The motion is based on B&A's admissions by virtue of failing to timely respond to the request for admissions.

On October 10, 2013, B&A filed an amended[1] verified motion to withdraw the admissions. [ECF No. 51]. B&A argues, among other points, that withdrawing the admissions would promote a resolution on the merits, as the FDIC's summary judgment motion was based solely on B&A's admissions, and that the FDIC would not be prejudiced by the withdrawal because in B&A's Rule 26 disclosures and answer it

---

[1] B&A's original motion [ECF No. 49] was stricken for failing to comply with Local Rule 7.1(a)(3). [ECF No. 50].

had consistently refuted its purported admissions. B&A's counsel, however, confirmed that he checked his previous email account from his prior firm (i.e., the one he left on July 22, 2013) and that he did receive the FDIC's request for admissions on July 10, 2013.

The FDIC filed a response in opposition and makes two main arguments. [ECF No. 55]. First, it argues that B&A's counsel knew, or should have known, about the request for admissions because they arrived in his email inbox 12 days before he left his firm. Second, the FDIC argues that it would be prejudiced if the motion were granted because it will not be able to engage in additional needed discovery, as the discovery deadline has passed, to confront allegedly new issues raised by B&A in its untimely response to the request for admissions. According to the FDIC, the "new" issue is that B&A claims that Amtrust Bank employed an agent who provided B&A with closing instructions and approvals.

In its reply, B&A challenges the argument that the belated response to the request for admissions raised a new issue or defense, saying that the FDIC has "been aware all along" of B&A's defenses, including those regarding "agent/intermediary Monster Mortgage." [ECF No. 59].

## II.   APPLICABLE LEGAL PRINCIPLES

The party upon whom a request for admission is served has 30 days to respond. Fed. R. Civ. P. 36(a)(3). If a party fails to respond within the 30–day period, the "matter is admitted." Fed. R. Civ. P. 36(a)(3). "A matter admitted under [Rule 36] is conclusively

established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b).

"Essentially, Rule 36 is a time-saver, designed 'to expedite the trial and to relieve the parties of the cost of proving *facts that will not be disputed at trial*.'" *Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1268 (11th Cir. 2002) (emphasis in original) (quoting 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2252 (2d ed. 1994)). But when a party propounds a request for admissions "with the wild-eyed hope that the other side will fail to answer and therefore admit essential elements (that the party has already denied in its answer), the rule's time-saving function ceases; the rule instead becomes a weapon, dragging out the litigation and wasting valuable resources." *Perez*, 297 F.3d at 1268.

Consistent with Rule 36(b), the Eleventh Circuit has set forth a two-prong test governing the determination of whether a party should be permitted to withdraw or amend admissions. "First, the court should consider whether the withdrawal will subserve the presentations of the merits, and second, it must determine whether the withdrawal will prejudice the party who obtained the admissions in its presentation of the case." *Perez*, 297 F.3d at 1264 (internal citations omitted). "Rule 36(b)'s two-part test is much more than merely hortatory; it emphasizes the *importance of having the action resolved on the merits*, while at the same time assuring each party that justified reliance

5

on an admission in preparation for trial will not operate to his prejudice." *Id.* at 1265 (emphasis in original) (internal citations and quotations omitted).

The first prong of this test "emphasizes the importance of having the action resolved on the merits . . . and is satisfied when upholding the admissions would practically eliminate any presentation on the merits." *Id.* at 1266 (internal citations and quotations omitted).

The *Perez* court discussed the nature of the prejudice contemplated by the second prong:

> The prejudice contemplated by the Rule is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth. Rather, it relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously answered by the admissions.

*Id.* at 1266 (internal citations and quotations omitted).

### III.   ANALYSIS

The FDIC's request for admissions is not merely related to the types of time-saving matters addressed in *Perez*, such as admitting that a document is authentic, or that an exhibit is an accurate copy of the original, etc. Instead, the FDIC's request for admissions essentially re-serves the FDIC's "complaint in the form of a request for admissions in order to require" B&A to admit or deny nearly every paragraph of the complaint after it "has answered." *Perez*, 297 F.3d at 1269. These kind of requests are generally disfavored. *Id.*

Because the FDIC's request for admissions goes to the core of its claims, there is little doubt that withdrawal of the admissions would aid in the ascertainment of the truth and a resolution on the merits. Indeed, the FDIC has filed a summary judgment motion based on the admissions, thereby establishing their significance and demonstrating that the merits would surely be promoted if the admissions were to be withdrawn. Accordingly, the Undersigned finds that B&A easily satisfies the first prong of the *Perez* test. *See Chen v. Cayman Arts, Inc.*, No. 10-80236-CIV, 2011 WL 2580769 (S.D. Fla. June 29, 2011).

B&A also prevails on the second prong of *Perez*'s two-part test. The FDIC claims that it would be prejudiced because it would be unable to take discovery regarding the Amtrust Bank agent who provided B&A with closing instructions and approvals, but it seems hard to see how. In its Rule 26 disclosures, B&A listed the names of the specific employees and/or agents of Monster Mortgage (the Amtrust Bank agent) who were involved in the closing instructions and approvals. [ECF No. 51-1]. And in its answer and affirmative defenses, B&A denied the FDIC's critical allegations. [ECF No. 18]. Thus, well before the discovery cutoff, the FDIC knew of Monster Mortgage and knew that B&A denied the allegations of its complaint, but the FDIC chose to do no discovery on these issues. A party's decision to not take any discovery based on admitted requests does not constitute the prejudice contemplated by *Perez*. *See Chen*, 2011 WL 2580769, at

*4. Therefore, the Undersigned does not accept the argument that B&A's belated responses somehow generated a sudden need to take additional discovery.

Finally, the Undersigned does not find persuasive the FDIC's argument that B&A's counsel should have known that the requests were sitting in his email inbox for almost two weeks before he switched firms. While the FDIC's argument is probably factually accurate, the *Perez* test does not include an "excusable neglect" component. If it did, then it is far from clear that B&A would be able to prevail under that test. *See, e.g., S.E.C. v. Simmons*, 241 F. App'x 660 (11th Cir. 2007) (affirming denial of motion to vacate default because defendant's attorney's error in not responding to the complaint did not constitute excusable neglect). But the test here is the two-part *Perez* test which B&A met, not an excusable neglect assessment.

## IV.   CONCLUSION

For the reasons stated above, B&A's motion to withdraw its admissions is **GRANTED.**

**DONE and ORDERED** in Chambers, at Miami, Florida, October 29, 2013.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE